UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA ORIHUELA-KNOTT AND DOUGLAS KNOTT,<br><br>Plaintiffs,<br><br>v.<br><br>THE SALVATION ARMY, a California Corporation, SYLVAN YOUNG, as an individual and as a management official of THE SALVATION ARMY, and DOES 1 through 10, Inclusive,<br><br>Defendants. | No. 2:18-cv-01060-KJM-DB<br><br><u>ORDER</u> |

          Plaintiff Gina Orihuela-Knott sues her former employer, the Salvation Army, and her former supervisor, Sylvan Young, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200, *et seq*. Orihuela-Knott's husband, plaintiff Douglas Knott, alleges a loss of consortium caused by his wife's mistreatment. Defendants move to compel arbitration. Mot., ECF No. 5. Plaintiffs oppose. Opp'n, ECF No. 13. The court submitted the motion on August 3, 2018. ECF No. 15. For the following reasons, the court GRANTS defendants' motion.

/////

/////

/////

1

I. BACKGROUND

   A. Factual Background

   Plaintiffs both worked for the Salvation Army: Knott started in February 2010, and Orihuela-Knott in June 2011. Compl., ECF No. 1, ¶¶ 4-5, 8; Douglas Knott Decl., ECF No. 13-2, at 1. In August 2017, defendant Sylvan Young became Orihuela-Knott's immediate supervisor. Compl. ¶ 9. Shortly thereafter, Young allegedly sexually harassed Orihuela-Knott in violation of the Salvation Army's Anti-Harassment Policy. *Id.* ¶¶ 10-15. First, he allegedly touched her leg at an employee lunch, and adjusted himself to maintain contact when she tried to move away. *Id.* ¶ 10. Second, he allegedly made her go to lunch with him alone, then asked whether she was trying to get pregnant. *Id*. ¶ 11. Third, he allegedly breathed heavily on her neck and face while they were alone in his office and then brushed his crotch against her shoulder while sporting an erection. *Id.* ¶ 12. She complained to Human Resources, but the Salvation Army did nothing in response. *Id.* ¶ 13. Douglas Knott alleges he has suffered a loss of consortium as a result of Young's harassing conduct. *Id.* ¶¶ 70-72.

   B. Procedural Background

   Plaintiffs filed this lawsuit on April 27, 2018, asserting the following nine claims: (1) Hostile work environment; (2) disparate treatment based on race, color and sex; (3) assault; (4) battery, (5) intentional infliction of emotional distress; (6) invasion of privacy; (7) respondent superior liability; (8) strict liability; and (9) loss of consortium. *Id.* ¶¶ 32-72. Defendants moved to compel arbitration on May 25, 2018, asserting plaintiffs' claims all fall within the scope of a binding arbitration agreement plaintiffs both signed in 2015. Mot. at 7-9. Plaintiffs concede they signed the agreement, and that the claims fall within the scope of that agreement, but argue the agreement is unconscionable and therefore unenforceable. Opp'n at 2. Defendants rebut the assertion in their reply. Reply, ECF No. 16.

II. LEGAL STANDARD

   Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where there is an enforceable arbitration agreement,

the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. § 4. This statutory language is mandatory and grants the court no discretion to decline to enforce a valid arbitration agreement. *See Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation and quotations omitted).

"Because unconscionability is a generally applicable defense to contracts, [] courts may refuse to enforce an unconscionable arbitration agreement." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). "Under California law, the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (citations and quotations omitted). A successful unconscionability defense requires proof that "the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.* (citation and quotations omitted). Procedural and substantive unconscionability "need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). Rather, courts use a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114 (2000)).

III. ANALYSIS

Here, the parties agree plaintiffs entered into an arbitration agreement with the Salvation Army, and they agree plaintiffs' claims fall within the scope of that agreement. Mot. at 6; Opp'n at 2. The sole dispute is whether the arbitration agreement is "procedurally and substantively unconscionable" and therefore unenforceable. Opp'n at 2. The court considers both procedural and substantive unconscionability, before concluding the agreement is not unconscionable.

3

A. <u>Procedural Unconscionability</u>

The procedural element of a court's unconscionability analysis focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Oppression may create procedural unconscionability if there is an "inequality of bargaining power" leaving the weaker party with no negotiation power and no "meaningful choice." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347–48, *as modified on denial of reh'g* (Feb. 9, 2015). California courts have held a party may establish oppression by showing either that the contract was one of adhesion, or by showing oppression from the "totality of the circumstances surrounding the negotiation and formation of the contract." *Id.* at 1348.

An "adhesion contract" is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961)). Although California courts have found "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability" in a range of circumstances, there is no *per se* rule to that effect. *See Sanchez*, 61 Cal. 4th at 914-15; *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("Although adhesion contracts often are procedurally oppressive, this is not always the case."); *see also Poublon*, 846 F.3d at 1261 (examining landscape of California case law; reaching same conclusion).

Here, plaintiffs' sole procedural unconscionability argument is that the arbitration agreement was presented in February 2015 as a non-negotiable condition of continued employment. *See* Opp'n at 4-6. They support this position with declarations stating they were both told they would be fired if they did not sign the agreement. Gina Orihuela-Knott Decl., ECF No. 13-1, at 3:3-6; Douglas Knott Decl. at 1:25-2:3. Plaintiffs also have filed declarations from two other Salvation Army employees stating they too signed the arbitration agreements believing they had no choice. *See* Tomasso Decl., ECF No. 13-3, at 1:24-2:2; McCarthy Decl., ECF No. 13-4, at 1:23-2:5. Defendants do not rebut the contention, and in fact appear to concede it. *See*

4

Reply at 5 ("requiring an arbitration agreement as a condition of employment is not illegal or procedurally unconscionable."). This evidence shows the Salvation Army forced plaintiffs to choose between signing the agreement or losing their jobs, signifying procedural unconscionability. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996-97 (9th Cir. 2010); *cf. Poublon*, 846 F.3d at 1263 (finding no procedural unconscionability where "no evidence in the record that [the employer] ever stated or suggested that Poublon would be fired for failing to sign the agreement").

Nonetheless, because these declarations constitute plaintiffs' only evidence of oppression, "the degree of procedural unconscionability of [this] adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *See Poublon*, 846 F.3d at 1263 (even if Poublon had filed evidence showing he "would be fired for failing to sign the agreement," without more the resulting procedural unconscionability would be low) (quoting *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).

B.   <u>Substantive Unconscionability</u>

Plaintiffs have not shown a high degree of substantive unconscionability. Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999); *see also Armendariz*, 24 Cal. 4th at 119 (requiring only "a modicum of bilaterality" to avoid substantive unconscionability). In a substantive unconscionability analysis, courts are largely concerned with terms that are "unreasonably favorable to the more powerful party." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145, (2013)).

Plaintiffs contend the arbitration agreement here is substantively unconscionable based on three provisions: (1) The provisions restricting discovery, (2) the confidentiality clause, and (3) the Private Attorneys General Act ("PAGA") waiver. Opp'n at 5-8. The court disagrees. In light of the applicable law, these three provisions are not so one-sided as to be "overly harsh," "unduly oppressive," "unreasonably favorable" or enough to "shock the conscience." *See Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal. 4th at 910-11).

5

1 As to the discovery limitations, plaintiffs fail to acknowledge *Poublon*, 846 F.3d at 1270, which extensively surveyed California law and rejected a virtually identical argument just last year. *Id.*; *see also* Opp'n at 7-8 (citing cases that predate *Poublon* by ten or more years). *Poublon* explained why discovery limitations such as the one at issue are not substantively unconscionable. *See* 846 F.3d at 1270. *Poublon* identified discovery limitations that have gone too far by, for instance, binding the arbiter to an unduly restrictive standard when determining the need for further discovery. *Id.* (citing examples where arbiter could not approve additional discovery unless there was a "compelling need"). Here, plaintiffs identify no such undue restriction, nor does the agreement itself reflect one. *See* Agreement at 3 (ECF No. 13-4 at 4-7) ("the arbiter shall have exclusive authority to consider and enter orders concerning any issue arising related to the quantity or conduct of discovery. The Company and/or I can petition and/or request that the Arbiter allow additional discovery . . . ."). Nor have plaintiffs made any showing that they "would be unable to vindicate [their] rights under the [discovery] standard provided in the agreement." *Poublon*, 846 F.3d at 1271 (noting same shortfall). The court rejects plaintiffs' argument that the discovery limitation is substantively unconscionable.

The court also is unpersuaded by plaintiffs' argument that the confidentiality clause is unconscionable. Opp'n at 7-8. Again, *Poublon* rejected a virtually identical argument, a decision plaintiffs have not acknowledged. *See* Opp'n at 7-8. *Poublon* examined California law and found that because the confidentiality clause at issue in that case applied only to the arbitration proceedings and contained exceptions for contrary party agreements or government policies, it was not substantively unconscionable. 846 F.3d at 1265-67. Here, the agreement delineates precisely the same exceptions. *See* Agreement at 3 ("The Company and I agree to maintain the confidentiality of arbitration except: (i) to the extent agreed upon otherwise, (ii) as may be otherwise appropriate in response to a governmental agency or legal process, . . . or (iv) if the law provides to the contrary."). Under *Poublon*, this confidentiality clause is not substantively unconscionable.

Finally, plaintiffs' argument as to the PAGA waiver fares no better. Plaintiffs have raised no PAGA claims and they admit this lawsuit does not implicate PAGA. *See* Opp'n at

9; *see generally* Compl.  Even if the PAGA waiver were both relevant and unenforceable, the court has not found, nor have plaintiffs identified, any case holding that an unenforceable and illegal PAGA waiver is substantively unconscionable so as to void an arbitration agreement containing such a waiver.  *See Poublon*, 846 F.3d at 1264 ("We are not aware of a California case holding that a PAGA waiver is substantively unconscionable."); *see also Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109, 1123 (2015) (questions of "whether an agreement has been validly formed, and whether its terms are adhesive or unconscionable . . . are different from the determination of whether [the employee] entered into a knowing and intelligent waiver of her right to bring a PAGA claim . . . or whether . . . such a waiver is unenforceable as against public policy").

In sum, although the agreement exhibits a low degree of procedural unconscionability, plaintiffs have not established any substantive unconscionability, let alone that "the degree of substantive unconscionability is high," as would be required to decline to enforce this agreement on account of unconscionability.  *See Poublon*, 846 F.3d at 1263 (citing *Serpa*, 215 Cal. App. 4th at 704).

IV.     CONCLUSION

For the reasons explained above, the arbitration agreement is not unconscionable. Considering plaintiffs raise no other basis upon which to deem the agreement invalid or unenforceable, the agreement must be enforced.  *See Kilgore*, 718 F.3d at 1058 (court has no discretion; if agreement is valid its enforcement is mandatory).  The court therefore GRANTS defendants' motion to compel arbitration (ECF No. 5); DIRECTS the parties to proceed to arbitration under the terms of their agreement; and STAYS this case pending resolution of arbitration.  The parties shall file a joint status report within fourteen days of the completion of arbitration.

IT IS SO ORDERED.

DATED:  August 20, 2018.

_____
UNITED STATES DISTRICT JUDGE